IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE VERIZON EMPLOYEE BENEFITS COMMITTEE, | § § § | |
| Plaintiff/Counter-Defendant | § § | |
| v. | § § | 3:05-CV-2105-P |
| MICHAEL FRAWLEY, | § § | |
| Defendant/Counter-Plaintiff/ Third-Party Plaintiff | § § | |
| v. | § § | |
| VERIZON COMMUNICATIONS, INC., CHESAPEAKE DIRECTORY SALES CO., VERIZON SERVICES CORP., HEWITT ASSOCIATES, LLC, and THE AYCO CO., L.P. Third-Party Defendants. | § § § § § § § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Third-Party Defendants' Motion to Dismiss Third-Party Plaintiff's First Amended Complaint Under Federal Rule of Civil Procedure 12(b)(6) ("Third-Party Defs.' Mot."), filed on June 29, 2006. Also before the Court is Counter Defendant's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) ("Counter-Def.'s Mot."), filed on June 29, 2006. Third-Party Plaintiff/Counter-Plaintiff Michael Frawley filed Defendant's Response to Motions to Dismiss ("Resp.") on August 7, 2006. Third-Party Defendants and Counter-Defendant filed separate replies on September 8, 2006. After a

thorough review of the pleadings, the briefing, and the applicable law, the Court GRANTS IN PART and DENIES IN PART both motions.

## I. Background

Michael Frawley ("Frawley") worked for R.H. Donnelly for 15 years between March 10, 1985 and June 30, 2000. Through various mergers and acquisitions, Frawley became an employee of Verizon Communications Inc. ("Verizon") on July 1, of 2000. (Counter Def.'s Mot. at 2.) Frawley participated in Verizon Enterprises Management Pension Plan ("Plan"). (*Id*. at 1.) In May of 2003 accepted an early retirement offer from Verizon that would give him a lump sum benefit of $563, 982.19 for years of service at Verizon and R.H. Donnelly. Frawley retired from Verizon on July 22, 2003. (Resp. at 2.)

More than two years after his retirement Frawley was contacted by the Verizon Benefits Committee ("Benefits Committee"). (Resp. at 3.) The Benefits Committee informed Frawley that it had made an error in the calculation of his pension resulting in an overpayment to him. The Benefits Committee told Frawley that he was not entitled to pension benefits for his 15 years of service to R.H. Donnelly because R.H. Donnelly had never been a participating employer in a Bell Atlantic pension plan. (Counter-Def.'s Mot. at 3.) The Benefits Committee demanded the return of alleged overpayments, totaling $239, 872.10. (*Id*. at 2). Frawley refused to return the money. Verizon suspended Frawley's medical subsidy in order to recoup the overpayment of Frawley's pension benefits. (*Id*. at 3.)

The Benefits Committee filed suit to recover the overpayment. In response, Frawley asserted counterclaims against the Benefits Committee, and filed a third-party complaint against

Third-Party Defendants. Frawley contends that but for the misrepresentations of the Benefits Commitee in 2003, he would not have elected early retirement. Instead, he would have remained in employ with Verizon, at a pay rate of approximately $95,000 a year, and would have continued to accrue retirement benefits. (Def.'s Answer First Am. Compl. at ¶¶ 39- 40). Frawley also asserts that the misrepresentations will cost him significant additional taxes and penalties, particularly if his IRA is disqualified. (*Id*. at ¶¶ 41- 42).

Frawley alleges that the Counter-Defendant and Third-Party Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA") by breaching its fiduciary obligations to him under 29 U.S.C. § 1104. Frawley claims this breach entitles him to relief under 29 U.S.C. § 1132. Frawley also alleges violations of 29 U.S.C. §§ 1054, 1022, and 1140. In addition, Frawley makes claims based on fraudulent inducement to take early retirement and detrimental reliance on Verizon's promises. For all his claims Frawley seeks appropriate equitable relief, including, but not limited to, the rescission of his election to take early retirement and a reinstatement to full retirement benefits effective as of his normal retirement dates.

Counter-Defendant and Third-Party Defendants filed Motions to Dismiss. They contend that the relief Frawley seeks is not the type of equitable relief authorized under ERISA. Also, Counter-Defendant and Third-Party Defendants allege 29 U.S.C § 1054 is not applicable and § 1022 does not provide a basis for relief. It is asserted that Frawley's fraudulent inducement and detrimental reliance allegations are state law claims pre-empted by ERISA. Counter-Defendant

also argues that if Frawley can recover for his harms under 29 U.S.C. § 1132(a)(1)(B), he is not entitled to obtain relief under 29 U.S.C. § 1132(a)(3) for any breach of fiduciary duty.

### II.     Legal Standard

Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") provides for the dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim for which relief can be granted. A motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted. *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Under the rule of *Conley v. Gibson*, 355 U.S. 41 (1957), a claim should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley*, 355 U.S. at 45-46. The Court must render its decision taking the complaint in the light most favorable to the plaintiff and taking its allegations as true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

The Court limits its inquiry to whether Plaintiff is entitled to offer evidence to support his claims and does not address whether Plaintiff will ultimately prevail on the merits. *Johnson v. Dallas Ind. Sch. Dist.*, 38 F.3d 198, 199 (5th Cir. 1994). However, dismissal is proper when "even the most sympathetic reading of [the] pleadings uncovers no theory and no facts that would subject the present defendants to liability." *Jacquez v. Procunier*, 801 F.2d 789, 791-92 (5th Cir. 1986).

**III.    Analysis**

   **A.    Appropriate Equitable Relief Authorized by ERISA**

The civil enforcement provision of ERISA, 29 U.S.C. § 1132(a) (otherwise known as ERISA § 502(a)), provides in relevant part that

> a civil action may be brought –
> (1)    by a participant or beneficiary –
> . . .
>    (B)    to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> . . .
> (3)    by a participant, beneficiary, or fiduciary
>    (A)    to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
>    (B)    to obtain other appropriate equitable relief
>       (i)    to redress such violations or
>       (ii)    to enforce any provisions of this subchapter or the terms of the plan

The Supreme Court has narrowly limited the kinds of equitable relief that are available under ERISA. For the purposes of 29 U.S.C. § 1132(a)(3) ("§ 1132(a)(3)"), equitable relief consists solely of "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). Relief may not be granted under § 1132(a)(3) if the relief sought is essentially a claim for money damages, even though it is phrased in equitable terms. *Id*. at 255. The Supreme Court further expanded on this, stating "almost invariably, . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's

breach of legal duty." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Bowen v. Mass.*, 487 U.S. 879, 918-19 (1988).

To determine whether a remedy is legal or equitable, the court may consider "the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Id*. at 212 (internal citations omitted). For instance, restitution may be an equitable remedy or a legal remedy, depending on the circumstances. Restitution is equitable where plaintiff seeks "in the form of a constructive trust or an equitable lien . . . money or property identified as belonging in good conscience to the plaintiff [that can] clearly be traced to particular funds or property in the defendant's possession." *Id*. at 213. Where the property sought had been dissipated such that the plaintiff's claim is only as a general creditor, any claim must be for legal restitution and not equitable restitution. *Id*. at 213-14. The court in *Great-West* noted that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id*. at 214; *see also Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354. F.3d 348, 355 (5th Cir. 2003).

Since *Great-West*, courts have taken different views of what constitutes appropriate equitable relief under § 1132(a)(3) and what is essentially legal relief couched in equitable terms, particularly when plaintiffs allege a breach of fiduciary duties under ERISA and request payment of benefits or seek reinstatement into a benefit plan. *See Ranke v. Sanofi-Synthelabo, Inc.*, 2004 WL 2473282, at *6-7 (E.D. Pa. 2004). In *Ranke*, the defendants allegedly misrepresented to Plaintiffs that their retirement benefits would not be adversely affected by a transfer of

employment. The Court found that the plaintiffs' request for a reinstatement of the benefits calculated using formulas from prior to transfer of employment was "closer in nature to a legal remedy not contemplated by ERISA § 502(a)(3)" because plaintiffs were in essence seeking their reliance damages. *Id*. at 7. In another overpayment of benefits case, *Ramsey v. Formica Corp.*, 2004 WL 1146334 (S.D. Ohio 2004), the plaintiffs sought an injunction to force defendants to pay them benefits originally promised. The Court denied this claim because the "ultimate relief sought by Plaintiffs is really money damages," and thus not appropriate equitable relief under § 1132(a)(3). *Id*. at *4. *See also Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 583-84 (6th Cir. 2002) (restoration of plaintiff's lost health and life insurance benefits was not the kind of restitution available in equity under *Great-West* ).

Many courts have acknowledged that reinstatement of benefits is appropriate equitable relief. In *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1249 (9th Cir. 2000), the court stated that reinstatement is a traditionally equitable remedy for the purposes of ERISA. The Fourth Circuit held that reinstatement is "within the range of redress permitted by the phrase 'other equitable relief.'" *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 385 (4th Cir. 2001). In *Griggs* the plaintiff was misled about the tax consequences of an election to take early retirement and sought to be reinstated to his pre-election position. *Id*. at 373-74; 384. The court specifically noted that equity did not entitle the plaintiff to a windfall, and thus he might be required to return benefits already received in order to be reinstated to the Plan. *Id*. at 385. In *Adams v. The Brink's Co.*, 372 F.Supp.2d 854, 908 (W.D. Va. 2005), the Plaintiff sought to rescind his election for early retirement benefits and to be reinstated to the benefits he would have been entitled to

had he continued to work until his normal retirement date. The Court found this to be appropriate equitable relief, and also believed it equitable to allow the plaintiff to retain the benefits he had already received, in contravention of the normal "complete-restoration requirement" of the Fourth Circuit. *Id*. Although the Supreme Court in *Varity Corp. v. Howe*, did not rule on whether reinstatement into the employer's ERISA plan was appropriate equitable relief, the Court did not quarrel with the district court's determination that reinstatement into benefits was equitable relief. 516 U.S. 489, 495 (1996).

Frawley's demand for relief is virtually identical to the relief granted in *Adams*: rescission of his election to take early retirement, and reinstatement of the retirement benefits he would have been entitled to had he not accepted early retirement. Frawley is seeking to be restored to the same position he would have been in had the misrepresentations not been made to him, in which case he would not have elected to retire until a normal retirement age.

The Counter-Defendant and Third-Party Defendants note that Frawley did not work the required years that would have entitled him to full retirement benefits. Frawley never actually earned the benefits that he seeks. Thus, Counter-Defendant and Third-Party Defendants claim, this is not a situation where "money or property identified as belong[ing] in good conscience to [Frawley can] clearly be traced to a particular funds or property in [Counter-Defendant's or Third-Party Defendants'] possession." (Third-Party Defs.' Reply at 4). Counter-Defendant and Third-Party Defendants fault Frawley's requested relief for not meeting the standard of equitable restitution set forth in *Great-West*. However, Frawley does not need to meet the traceability requirement of *Great-West* because he is not seeking restitution, but rescission and

reinstatement. Rescission and reinstatement are separate equitable remedies from restitution. *See generally Adams*, 372 F.Supp.2d at 908; *Reynolds*, 202 F.3d at 1249. *Griggs* recognized not only reinstatement into employment, but also reinstatement into a pension plan, as appropriate equitable relief. *Id*. at 385. In addition, the Supreme Court in *Varity* seems to accept reinstatement into benefits as appropriate equitable relief. *Varity*, 516 U.S. at 495. Thus, the fact that Frawley's claim does not qualify as equitable restitution is irrelevant, as Frawley asserts separate bases upon which to claim equitable relief: rescission and reinstatement.

The Counter-Defendant and Third-Party Defendants assert that *Griggs* is inapplicable. *Griggs*, they argue, never dealt with unearned benefits, which would be at issue in this case. *Griggs* did specifically identify the problem of a windfall for plaintiff that might result from a reinstatement to benefits. The court noted that "because reinstatement is equitable in nature, Griggs is not entitled to a windfall," and therefore held that Griggs would be required to return benefits already received. *Griggs*, 237 F.3d at 385. To the extent that Frawley's requested relief would grant him a windfall that would go beyond the scope of equity, the Court may ultimately limit his recovery. However, the potential for receiving unearned benefits does not change the nature of the relief sought from equitable to legal.

According to Counter-Defendant and Third Party Defendants, Frawley is not seeking benefits he actually earned and is entitled to, but rather to be compensated for his reliance on misrepresentations made to him. Reliance damages are compensatory, and thus would be a legal remedy. They argue that if Frawley succeeds in gaining reinstatement of his benefits, the result would be to require Defendants to pay Frawley a sum of money. This, they argue, would be

equivalent to imposing personal liability on them, making the relief sought more similar to legal damages than to equitable relief.

In *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1186 (9th Cir. 2004), the defendant argued that instating plaintiffs into the benefits plan at issue, the SITE plan, would be a legal remedy for money damages since money would ultimately have to be paid. The court rejected this argument, saying "to instate the plaintiffs retroactively into SITE simply puts them in the position they would have been had Chevron not breached its fiduciary duty. . . . Although in this instance [this] remedy will result in Chevron paying plaintiffs 'sums of money' equivalent to the SITE benefits they lost because of Chevron's breach, the mere payment of money does not necessarily render the award compensatory 'monetary damages.'" *Id*.

The relief Frawley would obtain if successful in his suit would be more than a mere order for the Defendants to pay money. Frawley asks the Court to alter the legal relations of the parties. The Court would not issue an injunction to Counter-Defendant and Third-Party Defendants to pay out a sum of money, as the court would have had to do in *Ramsey* to grant the plaintiffs' desired relief. Here, Frawley requests a substantive change in his legal position. Frawley is seeking more than compensation for losses resulting from breaches of duty: he is asking the Court to undo his decision to take early retirement and to return him to the position where he could collect full retirement benefits. While this rescission and reinstatement into full retirement benefits may ultimately cause a sum of money to be paid out, it is still appropriate to consider this alteration of legal rights equitable relief, and not a claim for money damages. Moreover, Frawley seeks all appropriate equitable relief. If it is ultimately determined that

reinstatement into full retirement benefits is not viable or appropriate, other equitable relief may remain available.

      **B.**      **Other Bases for Dismissal**

          **1.**      **Failure to State a Claim Under 29 U.S.C. § 1054(g)**

Counter-Defendant and Third-Party Defendants assert that Frawley cannot state a claim under 29 U.S.C. § 1054(g) ("§ 1054(g)"). This provision of ERISA, also known as the "anti-cutback provision," states in relevant part,

> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(d)(2) or 1441 of this title.
> (2) For purposes of paragraph (1), a plan amendment which has the effect of--
>> (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
>> (B) eliminating an optional form of benefit,
>> with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

The anti-cutback provision prevents a participant's benefits from being reduced by an amendment to the plan. Counter-Defendant and Third-Party Defendants claim that the anti-cutback provision is inapplicable to the harms Frawley alleges because § 1054(g) only pertains to formal, written modifications of a plan. Counter-Defendant and Third-Party Defendants claim that Frawley has not alleged a violation of a written Plan amendment. Frawley asserts that the contested amendment to the plan is the letter he received from the Benefits Committee informing him of the error in computing his early retirement benefits and attempting to retract its earlier representations to him. (Def.'s First Am. Countercl. at ¶ 36; Def.'s Resp. at 7). This letter

informed Frawley of a calculation mistake, but Frawley does not allege that there was any change to the Plan itself on a system-wide level. Frawley has not sufficiently alleged an actual plan amendment, and therefore his claim under § 1054(g) must be dismissed.

### 2. Failure to State a Claim Under 29 U.S.C. § 1022

Frawley has asserted a cause of action under 29 U.S.C. § 1022. (Third-Party Plaintiff's First Am. Compl. at ¶ 33; Def.'s First Am. Countercl. at ¶ 49.) This statutory provision mandates a level of accuracy and comprehensiveness in a plan's Summary Plan Description ("SPD"). The ERISA statutory scheme is such that "under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of that Act." *Gosselink v. Am. Tel. & Tel. Inc.* 1999 WL 33737341, at *10 (finding that 29 U.S.C. § 1022 did not provide a private cause of action). Frawley cannot succeed on his claims because there is no private right of action for violations of 29 U.S.C. § 1022. To the extent that Frawley is using 29 U.S.C. § 1022 as an independent basis for relief, his claim must be dismissed.

### 3. Preemption by ERISA

Frawley, in his fifth and sixth counterclaims against Counter-Defendant, and fifth and sixth causes of action against Third-Party Defendants, makes claims based on detrimental reliance and fraudulent inducement. Third-Party Defendants and Counter-Defendant assert that Frawley is making a claim under state common law. Frawley, however, states in his response that he is not asserting state law claims. (Resp. at 5.) Frawley states he is only seeking the kind

of equitable relief available under ERISA. Third Party Defendants and Counter-Defendant's motion to dismiss the fifth and sixth counterclaims and third party claims are denied.

### 4. Breach of Fiduciary Duties Claims

Frawley brings a Breach of Fiduciary Duty claim under 29 U.S.C. § 1104 and states that he is entitled to relief under § 1132. Frawley does not indicate whether he is seeking relief under the provisions of § 1132(a)(1) or § 1132(a)(3), and in fact requests that he not be required to specify until he has the opportunity to conduct discovery. Counter-Defendant asserts that under *Varity*, 526 U.S. at 512, this breach of fiduciary claim must be dismissed if Frawley is seeking relief under § 1132(a)(1). The motion to dismiss is premature. A plaintiff may assert claims in the alternative, and make an election at a later time. Counter-Defendant's Motion to Dismiss is denied.

### IV. Conclusion

For the foregoing reasons, the Court finds that Counter Defendant's and Third-Party Defendants' Motions are GRANTED IN PART and DENIED IN PART. Plaintiff's claims under 29 U.S.C. §1022 and § 1054(g) are dismissed. Plaintiff may proceed with his remaining claims.

**It is so ordered**.
Signed this 15th day of November 2006.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE